Ms. Preston, you may proceed. Good afternoon, everyone.  As said earlier, my name is Megan Preston. I represent the appellants in this matter, Goodberlet Home Services, and John Kilroy. John Kilroy is a shareholder and officer of Goodberlet. This matter relates to the purchase of a business by Goodberlet from Girard Electric Services and, I'm sorry, Girard Electric Incorporated in Kankakee, Illinois. Mr. Kilroy is a guarantor on the note related to the purchase of that business, and that is the case today. This case has a little bit of history to it. The Girards, who are the appellees in this matter, purchased the business in 1972 and ultimately sold the business in 2017. The business had been in operations for quite a long period of time before the Girards purchased it. In 2016, there were discussions between my client and the Girards regarding the purchase of the business. They had a valuation done for the business and dated late 2016, took an inventory in December of 2016. There were further negotiations between the parties in the spring of 2017, and there was ultimately a closing of a sale September 18th of 2017. Shortly after the closing of the sale, my client discovered an advertisement that had been placed in the local paper that essentially suggested that the business may be closing. It was an ad place where the Girards were saying goodbye to the business community after 82 years in total of the business being around, and that essentially kicked off the dispute between the parties. And how did that violate the contract? Our position is that it violates Sections 1 and Sections 8 of the Purchase Agreement. Section 1 being the parts of the business that were being sold, which included things like the inventory and the goodwill specifically. And Section 8, which included representations and warranties by the seller, including that they would not damage any of the things being sold after the signing of the contract up to closing, and those provisions of the contract were to survive closing. So you're not talking about the non-compete, slash, non-disclosure agreement? I am not. After my client discovered the advertisement place, they were concerned. It sounded like the business was closing its doors. There were some negotiations or discussions between the parties and their attorneys. Ultimately, Good Burlett stopped making payments to the Girards under the installment purchase agreement, and both sides eventually filed breach of contract claims against the others. My client filed first in 2018, shortly after discovering the dispute, and then in 2019, the Girards filed their breach of contract claim for failure to make the payments under the promissory note. Prior to the time the case ultimately proceeded to trial, there were some discovery violations on my client's part. There were orders entered by the trial court ordering compliance with discovery. Ultimately, Judge Albrecht dismissed my client's complaint without prejudice under Rule 219. When I became involved in the case, we tried to have our complaint reinstated. That motion was denied by then-Judge Parkhurst, and so the case proceeded to trial ultimately only on the Girards breach of contract claim against my clients. I'm going to start with the issue related to the trial. The trial, Judge Parkhurst granted judgment in favor of the Girards and against my client. The main issue that we have regarding her decision on the trial relates to whether my client and the Girards breached the contract. So again, provisions of the contract that we believe were breached were Sections 1 and Sections 8 regarding what were to be sold and the state of those items that we purchased. There was some evidence presented by my client at trial regarding the value of the accounts receivable and inventory of Girard Electric when we purchased it, and then, as I mentioned earlier, the issue with damage to goodwill that occurred based on the advertisement that was placed. The counterclaim filed by the Girards is, I think, pretty simple. They essentially allege that they agreed to sell the business to GoodBurlap that included accounts receivable and goodwill and tangible property for $800,000, that the sale closed and GoodBurlap began operations, and then there are allegations regarding the default in the payments. There's no allegation as to whether the Girards performed their obligations under the contract. So our position is that as part of their breach of contract claim, the Girards were required to both plead and prove that they complied with their own obligations under the contract in order to proceed. Is that something that typically you would raise as an affirmative defense? That was, that's the position of the trial court. Well, I'm asking, I'm not worried about the trial court, I'm worried about me. It would seem to me that that's something that would often be raised as an affirmative defense. If it is raised as an affirmative defense, I believe it's an improper affirmative defense. Why? Because an affirmative defense is a matter that defeats the cause of action. It's essentially like, think about it in terms of a 2619 motion to dismiss. You're admitting the underlying allegations of the claim. You're admitting that the plaintiff essentially stated and could potentially prove the cause of action. You're raising an affirmative matter outside of the elements of the cause of action that otherwise defeat the claim. This is part of the actual claim. A breach of contract claim requires a plaintiff to prove that they performed their own obligations under the contract. That's why I think there's a distinction. And as a side note, I think affirmative defenses are a little overly pled and often not correct in how they're pled, you know, at this point. Things are raised all the time that you'll see an affirmative defense that simply alleges that the plaintiff did not prove their claim or cannot prove their claim. That's not an affirmative defense. That's attacking the underlying claim that exists. So, in order for the, in order for Good Brillette to prove their case, they have to show the fact finder that the value of the widgets are as they claimed at the time of the sale? Is that something they have to affirmatively prove, in your opinion? I don't think they necessarily have to be that specific. Well, how specific do they have to be? I think when there's an evidentiary issue as to whether or not they actually did what they said they were supposed to do under the contract, then I think that is on the, I think the burden lies with the plaintiff to demonstrate otherwise. For example, make it a little bit simpler. If the Gerards hadn't turned over the keys to the business, that would be a clear breach of contract, and they would not have been permitted to proceed with their claim asking for damages to my client. I think this is a little bit more complicated of a scenario where we're talking about things that aren't necessarily as easily defined, like the value of goodwill, but it's the same principle. And you don't think that they would have had to plead the failure to turn over the keys as an affirmative defense? No, I don't. I think it's simply a matter of the plaintiff is required to plead in their own claim that they complied with the terms of the contract. In this case, we don't even have an allegation that's that straightforward. The Gerards did not plead within their complaint, their counterclaim, that they complied with their own obligations. They simply say that there was a closing and that Good Brillat began operating the business. Perhaps there's an implication, but it's clearly not a clear statement that what they actually did was perform their obligations. And given that there were obligations that go up to closing and survive closing, I think it could have been spelled out a little more clearly. Now, that's a pleadings issue. Absolutely. That's a pleadings issue. But again, the principle is generally the same. I think what the trial court did here is flipped the burden of proof regarding the evidentiary issues as far as what the Gerards did to something that has to be affirmatively demonstrated, pled in, demonstrated by Good Brillat. I can see where there would be, it was a confusing case. It was a case that initially did start as a claim by Good Brillat that the Gerards breached the contract. It's just by the time we got to trial, that's not what the case looked like. So that's the main aspect of the error that I think the trial court got it wrong when she moved to that burden of proof from the Gerards to my client. I think the standard of review here is de novo. I know there were some differences of opinion raised in the response brief by the appellees. They were looking at it, I think, as an abuse of discretion issue regarding evidentiary issues. However, when the court applies the wrong standard of law, which I think, or I'm sorry, the wrong standard of review, which I think is what the trial court did here, then it's a de novo review as opposed to any sort of discretionary or manifest way to be evidence standard. Just a couple of notes about the sanctions issue. It was, the standard there that the trial court used was basically a 2-1401 review when she was analyzing whether the complaint should be reinstated. I think that's clearly wrong since that statute clearly refers to final judgments, not to anything that's going on during the course of. Let's assume for your argument that we agree. 214 was not the vehicle under which this should have been analyzed. Nevertheless, we can affirm on any ground. The question is whether discretionarily the court was within its rights not to allow the new complaint to be filed in light of everything that went before. I think it's a little tricky in this circumstance because the review was under 1401. But it really was a diligence review, which is kind of at the heart of 219 anyway. That was certainly a big part of it, was the lack of diligence in responding to discovery. My position is that I think we were probably at a little bit of a disadvantage because there was a change in judges from the one who initially entered the order. And I would note that the dismissal order was without prejudice. I think it was clearly done to try to get discovery completed by my client in sort of an implication that the claim could be reinstated at some point in time. Now clearly, there were a succession of lawyers. There were. You're not the lawyer that did the arguably problematic things. But even after Judge Albrecht's dismissal without prejudice in July of 21, there continued to be problems, right? There was an additional request for sanctions. There was an additional fine imposed for noncompliance. Ten months went by before the request. So I mean, it's not a motion to reconsider. That would be a wrong way to look at it. Correct. It's not a 214-01 analysis. We agree. But couldn't Judge Parkhurst, because we have to look at this from an abuse of discretion, right? Yes. Couldn't she have looked at what transpired from the dismissal in July all the way up to the request and say, too much has gone under this bridge. It's too late. I'm just going to continue and not allow it. And now it's with prejudice. I mean, how is that an abuse of discretion? Sure. Perhaps she could have, perhaps not. But when she's basing her decision on a completely wrong standard, which involves other analyses, too, I think it's difficult to make that clear determination. My position is, as soon as we got involved in the case, we endeavored to attempt to comply with the prior discovery orders. We paid the sanctions that had previously been ordered. There's obviously a public policy in favor of having cases decided on the merits. And I don't think those things were properly considered by Judge Parkhurst when making her determination. I think, had she really considered simply, what is the purpose of Rule 219? What are we doing here? I think that her decision would have been, let's have this case proceed on both breach of contract claims. We weren't talking about two totally separate, different kinds of claims. We were all arguing about the contract at the end of the day. 219 does, of course, contemplate the possibility of dismissal with prejudice. It certainly does. I have certainly requested such relief in my time. Our position is not that Judge Albrecht got it wrong. It's not that Judge Albrecht, in her determination of the case, did something outside of her toolbox. My position is, her intent was, get compliance with discovery and get this case to a trial on the merits. And I think that's where Judge Parkhurst kind of lost sight of the ultimate issues and the ultimate things that she should be looking at on the motion to reinstate. Justice Heidel, any additional questions? I have a couple. Yes. One question that's not substantive. I'm looking at Exhibit A, yes, Exhibit A, which were these marked out in the original documents that were at trial? And, counsel, I'd be happy to show you. I'm assuming that I received these coming directly from the record. I don't know. My colleague's copies look the same. So there was portions that was stricken and just, I guess, are being recorded. I don't have to make a record here, do I? But page 5 and page 4 of the original document, C20, C21, and those are in paragraphs C and F. And there's portions of it stricken. And you can see from your seat, I believe, counsel, that that was stricken. I just wanted to know, did the trial judge see those portions? Is that what she looked at? I don't remember having a redacted copy. I think we had a full set. We had an agreed set of exhibits. It's possible a copy was highlighted and maybe as copying went on, it struck things. But there should be a full copy in the file. But you don't recall anything redacted? I don't recall anything redacted at all. All right. Thank you. We'll have an opportunity in rebuttal. Mr. Barron. Thank you, Justice. This may please the Court. My name is Dave Barron. I'm here representing the Gerrards, Francis Gerrard, Richard Gerrard, and Janet Giroux, who are each siblings, and the former owners of Gerrard Electric. They are the longtime owners of Gerrard Electric and have been in the family for several decades in Kankakee, Illinois. It's an electrical supplier and contracting company. Seven years ago, the Gerrards, the appellees, sold their family business to Gooberlett as part of a contract that was negotiated over the term of 18 months. Less than two years after the appellants signed that contract, took over the business, began doing business with former customers using the name and likeness of the company, Gooberlett stopped entirely making payments on the contract as due. Both parties were represented by counsel during the negotiations of the contract? Yes, Your Honor. Thank you. After Gooberlett tendered only a third of the agreed-to price, approximately $270,000 of the $800,000 that was promised, the Gooberlett stopped paying entirely. And the personal guarantor, Mr. Kilroy, who was the owner of Gooberlett, did not meet the obligation as well. The Gerrards here complied with the terms of the agreement specifically, sent a notice of default, a notice of acceleration, and then filed their claim in court for breach of contract. The Gerrards have been seeking since then to enforce the terms of their agreement as have been written. The trial court held after hearing all the facts that could be mustered by both the Gerrards and Gooberlett and Mr. Kilroy as to the issues at hand, that the Gerrards had substantially performed under the contract, under their obligations of the contract, and also that they had proven their breach of contract claim. Accordingly, Mr. Kilroy and Gooberlett were held liable for the remaining amount on the contract, plus the interest that's specified in the contract, and damages, as well as costs. Under the appropriate standard here, which applies not just to the overall the breach of contract issue, but substantial performance, the appropriate standard is against the manifest weight of evidence. It's not in this case. The record amply supports the trial court's finding that the parties knowingly signed the agreement after a lengthy diligence period, where both parties were represented and all information that was requested by the potential purchaser was provided. As we outlined in our brief, the past several years of litigation have been protracted. There's been a number of different iterations of the complaint that were dismissed, voluntarily withdrawn, as well as affirmative defenses. A number of different theories that were put forward in those initial complaints that have been withdrawn or are not advanced. It was intended to throw a number of things against the wall, see what sticks. Nothing has. When you say complaints, you're talking about complaints filed by appellant that were brought and then dismissed or withdrawn. The iterations are theirs, not yours? Correct. Okay. Yes. Our complaint, the counterclaim was filed in 2018, excuse me, 2019. There's only one iteration of that. I do take issue with one thing that my opposing counsel mentioned about us not pleading specifically that we had substantially performed under the complaint. We did do that. We didn't specifically plead that we complied with every provision of the contract, but we did plead very clearly that we substantially complied with the contract. And that was held by Judge Parkhurst that we did proceed. We did meet that burden that we did do that. And again, that specific element is reviewed on an abuse of, excuse me, manifest weight of evidence issue. The newest issues that are raised here today and in the appellate brief deal with a number of procedural issues. Whether the defenses have been waived, as well as whether the motion to vacate the original claim was done properly. Can we talk about that? Yes. It's a little disconcerting that the trial court did the entire analysis under 214-01 sui sponte. And I presume you agree it has no application here. I wouldn't say direct application. Explain to me the answer. I don't think that that specifically pertains, as a 214-01 pertains specifically to the type of motion that was brought. So let's assume that looking at diligence, the court maybe got it right. Does it matter to us? Should we be concerned that the entire analysis went forward on the wrong statutory basis? I don't, Your Honor, because I believe that whether you look at this under how the case law addresses reviews of motions to vacate matters that have been dismissed for want of prosecution, or whether you review it under a discretionary standard for discovery issues, the standard is the same. It's an abuse of discretion situation. I would also say that the standard that Judge Parkhurst did consider as it pertained to diligence, needing to show some element of diligence or reasonable explanation for the delays, for the holdups on prosecuting the case, that is the relevant standard under how to review a dismissal for want of prosecution. The case law that we cited provide a number of different instances where the movement is required to show, provide some reasonable explanation for the past delays, for the willful misconduct. And that did lead to, in this case, a number of different sanctions. Is the standard the same for dismissal for want of prosecution as it is for a 219 sanction, discovery sanction? I don't think it is. I think for dismissal for want of prosecution, it is a bit higher. And that was the grounds. I don't agree that the dismissal in this case was performed strictly under a basis of 219 as a discovery sanction. It came as part of the inherent ability of the court to keep track of their docket and deal with dilatory parties. And that was the basis. This was not dismissed after a single missed discovery request. This was done after four years of several missed court appearances, several missed discovery requests, a number of different pleading problems along the way. That all feeds into it much more than just a 219 sanction type issue. But again, they're considered both on an abuse of discretion, which we believe Judge Parker's decision there does meet that standard. When was it dismissed with prejudice? Obviously, Justice Albrecht or Judge Albrecht dismissed it without prejudice. Yes. When did it end? When did that? I think with, well, let me say this. I think when Judge Parker's determined that was not going to reinstate that Fifth Amendment complaint. At that point, I think it was with prejudice. However, I think it also needs to be noted that my co-counsel herself admits that this related to the same issues and claims. At no point has my co-counsel identified anything different that would have been raised at trial as to the counterclaims or the claims. In fact, the relief that was sought by the original claim was exactly the same as the counterclaim, which was to relieve my clients of, excuse me, relieve Mr. Kilroy or Goodwill of any responsibility to pay under the contract. There was that full opportunity to present any and all evidence as to those issues. So it was a Fifth Amendment complaint that was dismissed with prejudice? Correct, Your Honor. How did the Fifth differ from the second, third, and fourth? If it wasn't different claims, what was the difference in the pleading? There were different permutations. I'm trying to recall the second claim. The second amended complaint was withdrawn voluntarily. The third was dismissed by Judge Albrecht. There were some related claims. As we went from the first to the fifth, certain things were removed. Certain details were added. Always alleging breach. Yes, Your Honor. Always alleging breach. And that was what was dismissed. And we do argue when that was dismissed, then there was an opportunity to amend an answer to include affirmative defenses that would have included a breach of contract claim, which was not done. The question came up a moment ago about what is an affirmative defense and what does not need to be pleaded directly. I think it's a stretch. I think Your Honor mentioned the price of widgets. To defend a case on the basis that one party did not state the accurate price for widgets, which is in itself a subjective number, that we would have to know that going into trial to prepare a rebuttal to that issue is not what's called for under 603. Under 2603, you are supposed to allege the issues, the matters that are going to become before the court. That was not done here. They were not pled. They were at that point outside. As Justice Parkhurst mentioned, those specific issues about the diligence period were not raised at any point in any of those six iterations of the prior complaint. So even more so, there was that level of failure to plead appropriately. We mentioned, we do address the waiver issue. Like I said, Your Honor, the appellate did file two iterations of affirmative defenses that by the time we were preparing for trial were not pled at that point. They had been stricken or they had been withdrawn. At no time was there any effort to amend those or change those going into trial. With respect to the particular arguments concerning the diligence, again, they were not raised in any of the six iterations of the complaint and they should be deemed waived. But again, Judge Parkhurst did not exclude any evidence on the basis that those matters had not been pled before the court. Anything that the appellants would have been able to muster to demonstrate those defenses was brought before the court and provided an open session. And as the judge's opinion makes clear, she states specifically that these matters had been waived, but even if they had not, the defense that had been presented does not excuse their responsibility for making the payments on the contract. We do provide in the briefing the factual basis, the evidentiary basis refuting those defenses that are put forward by Good Berlitz, specifically with respect to the diligence period. There was an 18-month negotiation. Both parties were represented. My clients engaged a valuation expert to help assist the negotiation. Provided his report that used two different valuation methodologies. He showed his work. Mr. Kilroy testified at trial that he had an opportunity to speak with Mr. Ohm about the very issues that in the brief he now claims deceived him. Mr. Kilroy conceded at trial that with respect to the inventory prices, the prices for the particular items, he deemed those to be guesstimates as well. He also said that he suspected that some might be overvalued, but in his words, we accepted it. There's a full opportunity to go through those items and demonstrate and come to an agreed price. That was done. The agreed price was 800,000. And then again, that was breached. As to the newspaper ad, again, this is, in particular, this is an affirmative matter that occurred after closing that involves new operative facts. If that's not an affirmative matter, it's tough to understand what might be. That should have been pled. But even if it hasn't, there was no information about, presented at trial, about the damages that were caused by that type of newspaper. Nothing about the circulation of the paper, about who might have read it. There's also nothing about anything to infer that anyone took the ad to infer that Girard was closing or that anybody would have gone to a different electric supplier as a result. Didn't it specifically say that they were not closing, that they would be continuing on at the same location? They said that the same services could be provided at the same location. They'd see the same friendly faces? Yes. And I think it's, it could be interpreted a number of different ways, and it might have had a positive impact. And that's, that again, would be something for the fact finder to determine at that point. But to the extent that revenues decreased after the publication, there was nothing presented at trial to tie in that decrease to that ad, one way or the other. No, and the extent was just a gut feeling from the business owner believing that that was the case, but no individual saying that that did lead them to go otherwise, or any sort of expert testimony that might have established that without somebody whose actual behavior was changed as a result of the ad. I think we've addressed the issues regarding the decision not to reinstate the complaint. I've addressed those to some degree here. One point I did want to make with respect to the dismissal without prejudice. I believe my co-counsel stated at some point that the only logical reason for it to be without prejudice would be to encourage the party to comply with discovery at that point. At the point of dismissal, there was no discovery request. Once the matter was dismissed, with or without prejudice, the discovery request that we put forward was premised upon that complaint, which had then been dismissed. So it's not logical to say that the judge was doing that to encourage any sort of compliance with a discovery request that had become moot at that point. Our position would be that that was done not in order to put any sort of automatic bar on the refiling of a claim or bringing a motion to vacate, but that would need to be examined under the applicable standard, which is the movement would need to demonstrate some reasonable explanation for the delay that occurred. But your discovery requests and your counterclaims after the dismissal resulted in additional 219 motions. Correct. And those were on the basis of rule 222, which we used as just a basic structure for anything you had to support the issues at hand in this case. Additional sanctions came as a result of the failure to produce at that point as well. But those were a separate discovery request that came later as opposed to the one that had been mooted by that dismissal. So judge, again, with respect to the claims I mentioned previously that the issues and facts that were brought to the judge were the same under the counterclaim and the claim. The remedy that was requested was the same. The opportunity to demonstrate why the appellants should not be responsible for their payment was provided. That was done in court and again, the court felt that it was not appropriate. So we do ask the panel to affirm the judgment below. Thank you. Ms. Preston. Just a couple of comments based on my colleague's argument. During the discussion on the motion to vacate and reinstate the complaint, I think there's still confusion about what standard the court should be looking at when determining whether to reinstate. There was discussion about a dismissal for one of prosecution  it's different than what we're talking about here. This is a motion for sanctions. So I don't think the three different matters we've talked about, 214.01, the dismissal for one of prosecution and Rule 219 are exactly the same thing. I think Rule 219 is specifically geared towards discovery, encouraging discovery, encouraging cooperation and getting the case to trial on the merits. And I think the place where it really does make a big difference with respect to what was then allowed to be considered a trial is if my client's complaint had been allowed to be reinstated, this talk of affirmative defenses wouldn't really be an issue because there would be an affirmative pleading where my client alleged the other side breached the contract. I also think there's a little bit of an overstatement about what specifically my client would have been required to allege regarding either its own complaint or an affirmative defense. The purpose is to notify the other side what the claims are. I don't think it would have been we're specifically saying that your inventory was old or we're specifically saying accounts receivable are old. We're talking about just simply a notification that there's a breach of contract. Here are some basics. Here are the provisions we believe were breached and go from there. But we weren't at that point. I would note that my client's deposition was not taken in this case. So there's certainly discovery that could have been obtained there. So I think that the court's reliance on the wrong standard of review when considering the reinstatement did ultimately have a big impact not just on Goodberlet's ability to pursue his case but on the counterclaim itself. Did you have a chance to present the evidence that you wished to present? Some yes, some no. There were some objections raised as to some of the evidence. And I honestly can't recall specifically offhand what came in and what did not. There was testimony from the, the Gerards presented their valuator, business valuator to testify about the value of the business. And I cross-examined him on some things. As I said, I know there were some objections but I can't think of specific ones offhand that were sustained. As you, following up on Justice Held's question, as you characterize this as the application on the part of the plaintiff to prove compliance, i.e. we actually did deliver widgets worth what, approximately what they claimed they were worth. Mr. Ohm, I think that was his name, testifies to how he evaluated things. There was testimony about how the secretary or somebody went in and did the inventory and all that stuff. I mean, what else would the plaintiff be required to do, even as you characterize it, to prove that they satisfied their obligations under the contract performed? Other than that, I mean, what else would they be required to do? Well, there's, there's additional testimony regarding the accounts receivable. My client testified that they basically jumped the accounts receivable. There was brief testimony on that. The goodwill, I think, was the bigger part outside of Mr. Ohm's testimony regarding the ad. Can you ever establish the value of goodwill or a decrease in goodwill without expert testimony? Without expert testimony? I don't know. There was evidence regarding the goodwill that, I'm sorry, the value of the goodwill that the Girards assigned themselves, I think, a year prior to the sale, 2015. So a year prior to the valuation. So that versus the time of the contract versus, you know, what my clients ultimately determined it was worth after their sales decreased substantially within a year of being in business. But again, plaintiffs say, okay, we, this is how we calculated the goodwill of the business. You're saying the goodwill was diminished by this publication. Yes. But how is a fact finder supposed to get to the bottom of that without an expert saying Mr. Ohm's interpretation was wrong or that this publication had some role in diminishing the value of goodwill? Well, we weren't proving the actual monetary value of the decrease. We weren't proceeding on our claim. How would you prove that there's any decrease without an expert? Well, I think the fact that the sales decrease is certainly evidence that there was some difference that occurred after the ad was placed. Remember the ad is kind of a two pages, the front saying, you know, thanks after 82 years or something like that. So my clients then take over and the business is performing substantially worse than what had been disclosed within the financial records. We weren't, we didn't have an expert to prove how much my clients incurred because we weren't proceeding on our own case regarding the breach of contract. We weren't trying to prove damage other than a nominal damage. I guess I'm trying to conceive in my head what you want the plaintiffs to have to do. You say they have the obligation to show that they were performing and I guess that means delivering the appropriate goodwill, delivering the appropriate value of widgets. I don't know what else they can do except call their expert to say this is what they were valued and this is what goodwill was valued after we subtract all the other things from the sale price and at that point even under your theory of what they have to show, why haven't they shown it? What about showing that they didn't place the advertisement, that they had nothing to do with the advertisement to saying goodbye or that it was never published? There was some evidence about exactly how it occurred and that being contacted by a reporter from the newspaper I think was how that was characterized but they could show the advertisement was never placed in the first place. It was a draft out there but it was never published or it's hard to make up facts as I'm standing here now but I do think that there were things they could have done to rebut the evidence and prove their own compliance. They transferred what they were supposed to under the contract. All right. Thank you. Any additional questions? Just a second. Justice Davenport, we thank both sides for spirited argument. We are going to take the matter under advisement and issue a decision in due course.